CARLTON, J.,
dissenting.
¶ 46. I respectfully dissent. I find the trial judge erred in excluding the testimony of Anthony Herrington, and I would therefore reverse and remand this case for a new trial. Exclusion of evidence constitutes an extreme remedy under the Uniform Rule of Circuit and County Court 9.04(I)(3). I will address the exclusion of Herrington’s testimony. The defense gave the State advance notice that Herrington would testify regarding what he saw at the time of the shooting.
¶ 47. After arguments in the trial court, the trial judge ruled that the defense timely disclosed Herrington as a witness to the prosecution in the defense’s supplemental discovery. However, the defense sought to offer additional testimony by Herring-ton which was not previously disclosed in the aforementioned supplemental defense discovery. The defense claimed that Her-rington provided the additional information on the day of trial. The trial judge allowed Herrington to testify in accordance with the previously disclosed supplemental defense discovery, but he precluded Herrington from testifying regarding the additional matters that he revealed on the day of trial. The excluded testimony significantly supports Williams’s self-defense theory and prevents the jury from obtaining a full understanding of the facts underlying Williams’s defense showing Calvin Younger to be the initial aggressor.
¶ 48. Williams contends that Herring-ton’s excluded testimony would have revealed that Herrington was acting as a bouncer at Jay’s Lounge on June 22, 2003. Herrington claimed Younger and his friends attempted to enter Jay’s Lounge on June 22. However, Herrington refused to allow the men to enter the club and ordered them to leave the premises. Her-rington would have explained that he prohibited Younger’s entry into Jay’s Lounge because Younger possessed a gun that day. Herrington would have been able to explain that Jay’s Lounge prohibited its patrons from carrying firearms on the premises. Further, Herrington explained that Younger then went to Charlie’s Club, which was nearby.
¶ 49. Admittedly, Herrington’s testimony failed to show that he saw a gun in Younger’s hand at the time that the actual shooting occurred outside the club. However, the excluded testimony provided critical facts supporting Williams’s theory of self-defense by showing that Younger possessed a gun the day of the shooting in the exact area of the shooting. The altercation and shooting occurred outside of Jay’s Lounge as Younger approached from the direction of the nearby club, Charlie’s. Further, Herrington’s testimony would have shown that Younger, while armed with a gun, actually tried to enter Jay’s Lounge on the same day the shooting occurred. Williams was known to be a frequent patron of Jay’s Lounge. From that excluded testimony, the jury might have inferred that Younger, who approached Williams from the nearby club, still possessed the gun when Williams shot him.[6] Therefore, I disagree with the majority’s finding that any error in the trial court’s limitation of Herrington’s testimony constituted harmless error. The trial court’s ruling unduly restricted Williams’s ability to present his defense, and as a result, the severe ruling deprived him of a fair trial.
*271 ¶ 50. The trial judge only allowed Her-rington to testify in accordance with the expected testimony set forth in the supplemental defense discovery asserting that, at the time of the shooting, Herrington saw Younger reach for his back pocket while arguing with Williams. The excluded testimony would have corroborated Williams’s claim that Younger possessed a firearm, and the jury could have also inferred that Younger and his companions were looking for Williams. The majority asserts that the evidence failed to show Younger was the initial aggressor. I disagree. Younger’s confrontational approach on the backdrop of previous hostilities and earlier gun possession that day show Younger to be the initial aggressor.
¶ 51. Younger pointed at Williams as he walked toward him through the parking lot and asked him: “What’s up now, Mother * ⅜ * * ⅛ *, What’s up now?” Herrington testified that aYounger then reached behind himself, but he did not see whether Younger had a gun in his hand. Williams testified that he saw Younger brandish his gun. Williams then pulled his own gun out of its holster and immediately began shooting at Younger. Afraid that Younger planned to kill him (Williams) in retaliation for previously filing armed robbery charges against Younger, Williams shot first. Other excluded testimony reveals that Younger had indeed made prior threats to kill Williams.
¶ 52. Exclusion of evidence is an extreme remedy. The Mississippi Supreme Court has held that a criminal defendant’s evidence should be presented in court, despite a discovery violation, in all but extreme circumstances. The supreme court stated:
[WJhere faced with a discovery violation, technical or otherwise, in a criminal proceeding, the [cjircuit [cjourt should-pretrial or during trial[:j
(1)Upon objection by a party, give that party a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witnesses, inspecting the physical evidence, etc.
(2) If, after this opportunity for familiarization, the objecting party believes that it may be prejudiced by lack of opportunity to prepare to meet the evidence, it must request a continuance. Failure to do so constitutes an acquiescence that the trial may commence or proceed and that the discovery rule violator may use the evidence as though there had been no discovery violation.
(3) If the objecting party requests a continuance, the discovery violator may choose to proceed with trial and forego using the undisclosed evidence. If the discovery violator is not willing to proceed without the evidence, the [cjircuit [cjourt must grant the requested continuance.
Skaggs v. State, 676 So.2d 897, 903 (Miss.1996) (citations omitted).
¶ 53. In Houston v. State, 531 So.2d 598, 612 (Miss.1988), the supreme court cautioned that exclusion of a defendant’s evidence at trial “ought [to] be reserved for cases in which the defendant participates significantly in some deliberate, cynical scheme to gain a substantial tactical advantage.” The majority finds that the trial judge must have believed the defense’s delay in revealing the substance of Herrington’s testimony was part of a calculated scheme to gain an advantage over the State, because the trial judge did not state in the record that the defense’s delay was not part of a scheme to achieve a tactical advantage. I find the majority’s argument incorrect.
¶ 54. In this case, the State received notice of the witness, albeit through supplemental discovery; therefore, other less severe remedies should have been pur *272 sued. Id. See also URCCC 9.04. In light of the trial judge’s ruling that the State received notice of this witness, the State could have claimed surprise only as to the additional testimony Herrington disclosed on the day of trial whereby Herrington asserted that he prohibited Younger’s entry to Jay’s Lounge due to Younger’s gun possession. Again, the trial judge found the defense gave sufficient notice regarding Herrington’s testimony about the actual shooting previously disclosed in supplemental discovery. Nothing in the record indicates that a continuance would have failed to yield a sufficient remedy to allow the State to investigate and meet the new evidence. Further, the trial court made no findings in the record that the defense acted willfully in failing to disclose the full nature of Herrington’s testimony. However, had the trial judge found such willfulness in the defense attorney’s perceived discovery violation, the trial judge could have imposed sanctions upon defense counsel. Based on the foregoing, I respectfully dissent.
BARNES, J., JOINS THIS OPINION.

. The men who were with Younger when he tried to enter Jay’s Lounge, and later when the shooting occurred, testified that Younger had a cell phone in his hand, not a weapon. However, no cell phone was recovered at the crime scene or ever produced by his companions.